UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALBERTO PABON,

    Plaintiff,

  v.

ROBERT BRENKA, ROBERTO TROFIMCHUK, JESUS AREIZAJA, and CITY OF BERWYN,

    Defendants.

No. 12 CV 8565

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

A brick was thrown through a window of Alberto Pabon's apartment. The police were called and the defendants—Officers Robert Brenka, Roberto Trofimchuk, and Jesus Areizaja—responded. During the investigation, Pabon began shouting at an occupant of the apartment above his. Defendants tackled Pabon, held him down, and threatened to tase him. A cell phone belonging to one of the officers was damaged. Pabon was arrested and charged with two counts of battery, one count of criminal damage to property, and one count of resisting arrest. Two of those charges were dropped, and Pabon was acquitted of the other two. Pabon brought this suit against the officers, alleging excessive force and false arrest in violation of the Fourth Amendment, and malicious prosecution under Illinois law. Defendants move for summary judgment.[1] For the reasons below, that motion is granted in part and denied in part.

---

[1] "Defendants" refers to Brenka, Trofimchuk, and Areizaja. The City of Berwyn, which is sued as an indemnifier, joined defendants' motion for summary judgment. [74].

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

Defendants' motion is based in part on the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citations and marks omitted). Once raised, "the plaintiff must establish two things in order to defeat the defense: first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1163–64 (7th Cir. 2014) (citations omitted). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v.*

*Rickard*, 134 S.Ct. 2012, 2023 (2014); *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."). When analyzing a qualified-immunity defense at the summary judgment stage, courts cannot resolve disputed issues of fact—the facts must be viewed in the light most favorable to the non-moving party. *Mordi*, 770 F.3d at 1164.

II. Facts[2]

A brick was thrown through a window of Alberto Pabon's apartment. DSOF ¶ 5. The police were called, and defendants responded to the scene. DSOF ¶¶ 5–6. Pabon's wife told defendants that the people in the apartment above the Pabons' were "gang-bangers" and that she thought they had "something to do" with the incident. DSOF ¶ 7. Defendants went up to investigate. DSOF ¶ 8.

One of the upstairs residents was 18-year-old Juan Melendez. DSOF ¶ 9. Melendez told defendants, in reference to Pabon and his family, that "these motherfuckers are nothing but bitches." DSOF ¶ 9. Pabon overheard that remark and felt disrespected; without being invited, he went up the 10–12 stairs and took two steps into the Melendezes' apartment. DSOF ¶¶ 10, 11, 15, 17, 24; PSOF ¶ 6. At that time, defendants were talking to Melendez's mother (DSOF ¶ 18; PSOF ¶ 3), and Pabon was about five feet away from Melendez (DSOF ¶ 16; PSOF ¶ 8). Melendez was small in stature. DSOF ¶ 14. Pabon and Melendez exchanged words

---

[2] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to defendants' statements, with Pabon's responses [68]. "PSOF" refers to Pabon's statements, with defendants' responses [72].

3

(at least Pabon was shouting—the parties don't say whether Melendez was also shouting). DSOF ¶¶ 10, 12, 24. Pabon said that Melendez was disrespecting Pabon's family and that the brick that was thrown through Pabon's window was really meant for Melendez. DSOF ¶ 10; PSOF ¶ 9. Melendez responded, "Oh, you're a bitch, you're a bitch," "this motherfucker is always calling the cops," and, repeatedly, "fuck you." DSOF ¶¶ 10, 13.

Pabon was wearing only a tank top and boxer shorts; he was not wearing shoes. PSOF ¶ 4. He did not have his fists clenched. PSOF ¶ 5. After Pabon took his second step toward Melendez, one of the officers said, "hey, hey, hey," and then Pabon was tackled from behind, causing his chest to hit the floor. DSOF ¶ 19; PSOF ¶¶ 6–7, 10–11.[3] Pabon was tackled about three or four seconds after he entered the Melendezes' apartment. DSOF ¶ 34. Pabon did not know which officer tackled him, but Areizaja was on top of him and Brenka and Trofimchuk were on or around his hip. PSOF ¶¶ 12–14.

After being tackled, Pabon continued to say things to the Melendezes. DSOF ¶¶ 20, 23; PSOF ¶¶ 17–19. The parties dispute whether Pabon struggled or fought with defendants after he was tackled. PSOF ¶¶ 15; 40. Areizaja unholstered his taser, put it on Pabon's shoulder blade, and said, "If you don't stop, it's going to hurt." DSOF ¶ 22; PSOF ¶ 23. Areizaja told Pabon that he would be handcuffed but

---

[3] That Pabon was "tackled" is his version of the facts. Defendants say that as they tried to restrain Pabon, everyone lost their balance and fell. PSOF ¶¶ 36–39. Defendants contend they are entitled to summary judgment even if Pabon's version is accepted, and they have used his version in their Local Rule 56.1 statement.

4

he was not under arrest. PSOF ¶¶ 20–22. Areizaja also told Pabon that he (Areizaja) would have done the same thing (meaning Areizaja, if put in Pabon's position, would have acted as Pabon did). PSOF ¶¶ 20, 22. Pabon was handcuffed and escorted down the stairs, as defendants continued to tell him to cool off. DSOF ¶ 27.

Pabon was not injured and did not seek medical treatment or counseling as a result of the incident. DSOF ¶¶ 21, 28. Trofimchuk claims to have suffered a minor wrist injury. PSOF ¶ 38. After Pabon was secured, Brenka discovered that his cell phone had been damaged, and he contends that the damage was sustained during the incident with Pabon. DSOF ¶ 37; [61-1] at 49:1–16. Pabon was charged with two counts of battery (one against Brenka and one against Trofimchuk), one count of criminal damage to property, and one count of resisting arrest. DSOF ¶ 42. The charges for battery of Trofimchuk and criminal damage to property were dropped. PSOF ¶ 25. Pabon was tried and acquitted of the charges for battery of Brenka and resisting arrest. PSOF ¶¶ 26, 28. Pabon was not charged with assault. PSOF ¶ 24.

### III. Analysis

#### A. Excessive Force

Because Pabon's claim of excessive force arises in the context of an arrest, the officers' use of force is analyzed according to the reasonableness standard of the Fourth Amendment. *Plumhoff*, 134 S.Ct. at 2020 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In *Plumhoff*, the Supreme Court reaffirmed:

> [D]etermining the objective reasonableness of a particular seizure under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

5

> Amendment interests against the countervailing governmental interests at stake. The inquiry requires analyzing the totality of the circumstances.
>
> We analyze this question from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. We thus allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Plumhoff*, 134 S.Ct. at 2020 (internal citations and marks omitted) (quoting *Graham*, 490 U.S. at 396–97). *Graham* directed courts to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (internal citations and marks omitted). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012); *id.* at 525 ("[F]orce is reasonable only when exercised in proportion to the threat posed."). Finally, because defendants raise a qualified-immunity defense, they are entitled to another level of deference: "In short, while the substantive constitutional standard protects officers' reasonable factual mistakes, qualified immunity protects them from liability where they reasonably misjudge the legal standard." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013); *Saucier*, 533 U.S. at 205 ("If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.").

In their motion, defendants emphasize that the situation was tense and evolving, but that does not entitle them to absolute deference. *See Abbott v. Sangamon County*, 705 F.3d 706, 731 (7th Cir. 2013) (reversing summary judgment on excessive force claim and stating, "We are mindful that Deputy Sweeney acted in a rapidly unfolding situation and that officers are to be given leeway under those circumstances. But Sweeney attempts to transform the circumstances into much more than they really were."). Defendants rely on the facts that (1) Pabon went upstairs to "take things into his own hands" (DSOF ¶ 25); (2) Pabon had consumed one or two beers earlier that evening (DSOF ¶ 29); and (3) Pabon's wife had asked him not to go upstairs to confront Melendez (DSOF ¶¶ 30–31). But those facts do not entitle defendants to judgment as a matter of law, as there is no evidence that they were aware of them before they tackled Pabon. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 458 (7th Cir. 2010) (officers do not get the "added benefit of any facts that come to light after a relevant Fourth Amendment decision has been made"). Moreover, defendants are not entitled to summary judgment simply because Pabon was not injured. *Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009) (affirming denial of summary judgment where the defendant officer unreasonably carried and pointed a submachine gun at the plaintiffs, without firing it); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("Although injury is a relevant factor in determining whether an officer used excessive force, an excessive force claim does not require any particular degree of injury.") (citing cases).

There is no evidence in the record that defendants attempted any measure short of tackling—such as asking Pabon to go back downstairs, or standing between Pabon and Melendez. It is undisputed that Pabon went uninvited to the Melendezes' apartment and exchanged somewhat hostile words with 18-year-old Juan Melendez. But it is also undisputed, at least for purposes of the present motion, that (1) Pabon was unarmed (and that may have been obvious, given that he was wearing only boxer shorts and a tank top); (2) about five feet separated Pabon from Melendez; and (3) Pabon never clenched his fists.[4] Defendants do not contend that Pabon verbally threatened Melendez. Under the totality of the circumstances (viewing the facts in the light most favorable to Pabon), I cannot say as a matter of law that a reasonable officer would have believed it was reasonable to tackle Pabon and hold him down. *See Chelios*, 520 F.3d at 689–90 (reversing summary judgment where plaintiff was not docile and cooperative, but a jury could nonetheless find that he did not pose a threat and therefore that his conduct "in no way warranted being tackled by three officers."); *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (reversing summary judgment where plaintiff

---

[4] Under defendants' version of the facts, Pabon struggled with defendants on his way up the stairs, and they all lost their balance. DSOF ¶¶ 12, 24; PSOF ¶¶ 1, 36–37. Of course, in resolving the present motion, I must accept Pabon's version, not defendants'. Because excessive-force cases often involve meaningfully different accounts of the relevant facts, the Seventh Circuit has said that they are frequently unsuited for summary judgment. *See, e.g.*, *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *McAllister v. Price*, 615 F.3d 877, 884 (7th Cir. 2010); *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005); *see also Saucier*, 533 U.S. at 216 ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be.") (Ginsburg, J., concurring).

contended that he was docile and cooperative, but defendant officer grabbed him, twisted his arm, shoved him, and took him to the floor); *Clash v. Beatty*, 77 F.3d 1045, 1048–49 (7th Cir. 1996) (an officer's "shove" could violate the Fourth Amendment). Accordingly, defendants' motion for summary judgment on the excessive-force claim is denied.[5]

**B. False Arrest**

"'False arrest' is shorthand for an unreasonable seizure prohibited by the Fourth Amendment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014). "To prevail on his constitutional claim for false arrest, [plaintiff] must show there was no probable cause for his arrest." *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013) (citation omitted). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal citation and marks omitted). The subjective motivations of the officer are irrelevant. *Gibbs*, 755 F.3d at 537. Courts must consider the totality of the circumstances and step into the shoes of a reasonable person in the position of

---

[5] Even if summary judgment had been granted concerning the tackling of Pabon, Areizaja would face an additional hurdle. Under Pabon's version of the facts, Areizaja threatened to tase Pabon even after Pabon had been tackled and was not actively resisting. If that is true, Areizaja violated Pabon's clearly-established Fourth-Amendment rights. *See Abbott*, 705 F.3d at 732 ("[I]t was well-established in 2007 that police officers cannot continue to use force once a suspect is subdued."); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) ("[T]he law is clearly established that police officers cannot use 'significant' force on suspects who are only passively resisting arrest."); *Phillips*, 678 F.3d at 525 ("passive resistance" requires the "minimal use of force").

9

the officer, considering the facts known to the officer at the time. *Williams*, 733 F.3d at 756. "In deciding this question of law as part of a motion for summary judgment, [courts] must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Id*.

"Due to qualified immunity's protection, an officer needs only 'arguable' probable cause." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). "Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id*. (internal marks omitted); *see also Abbott*, 705 F.3d at 714 ("The probable-cause standard inherently allows room for reasonable mistakes, but qualified immunity affords an added layer of protection by shielding officers from suit for damages if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed.") (internal citations and marks omitted).

To establish arguable probable cause, defendants may not rely on facts that were not known to them at the time of the seizure. For example, defendants cannot rely on the fact that Pabon came upstairs "to take things in his own hands in order to calm Juan down" and the fact that Pabon's wife had asked him not to go upstairs. *See* [62] at 9. Those are facts learned from Pabon's deposition, and defendants do not say—much less show—that they knew as much at the time of the arrest. *See Carmichael*, 605 F.3d at 458 (officers do not get the "added benefit of any facts that

come to light after a relevant Fourth Amendment decision has been made"). Defendants also may not rely on their version, rather than Pabon's, of disputed facts. For example, defendants say that Pabon "had to be threatened to be tased in order to get him to calm down and become compliant with the officers." [62] at 9. In Pabon's version, he was already compliant and the threat of being tased was gratuitous. To decide defendants' motion for summary judgment, it's Pabon's version that counts.

Defendants do not identify when the seizure became an arrest justified by probable cause. That is critical, because nothing that happened after the arrest is relevant to whether there was arguable probable cause to effect the arrest. *See Carmichael*, 605 F.3d at 458; *Abbott*, 705 F.3d at 720 ("A jury could reasonably determine that, at the time he first deployed his taser, Sweeney lacked probable cause to arrest Cindy for resisting arrest, inasmuch as there had been no arrest or attempted arrest prior to that point."). "A seizure rises to the level of an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Abbott*, 705 F.3d at 719. At least arguably, Pabon's arrest was completed when he was tackled and held down by three officers. If so, defendants' reliance on events that happened after the tackling, such as Pabon's continued exchange of words with Melendez, is misplaced. *See* [62] at 9. But Pabon also says that, after the tackling, one of the officers told him that he was *not* under arrest. PSOF ¶¶ 20–22. Perhaps the arrest was completed when Pabon was

11

threatened with a taser, or perhaps when he was handcuffed. In any event, defendants' arguments are unpersuasive.

"[A]n arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott*, 705 F.3d at 715 (internal citation omitted); *see also McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012) ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect."). In their motion, defendants argue they had probable cause to arrest Pabon for any (or all) of: (1) battery of Brenka; (2) battery of Trofimchuk; (3) criminal damage to Brenka's phone; and (4) resisting arrest. [62] at 9. Defendants do not argue probable cause for any other offense (e.g., trespass, assault, or disorderly conduct). "The existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715; *Gibbs*, 755 F.3d at 538. But probable cause does not impose a "more-likely-than-not" standard on each and every element of the predicate crime. *Hawkins v. Mitchell*, 756 F.3d 983, 994–95 (7th Cir. 2014) (citing *Spiegel v. Cortese*, 196 F.3d 717, 724 n.1 (7th Cir. 1999)).

Criminal Damage to Property. There was no arguable probable cause to arrest Pabon for criminal damage to property. Most importantly, nobody learned that Brenka's phone was damaged until after Pabon had been arrested, and the

officers cannot get the benefit of that later-learned fact. DSOF ¶ 37; [61-1] at 49:1–16; *see Carmichael*, 605 F.3d at 458. Further, defendants concede that Pabon did not *knowingly* damage the phone (as required for a charge of criminal damage to property), as it was concealed from view in Brenka's pocket. [62] at 10; [71] at 9 n.2. Defendants argue that probable cause existed because "the fact is that Officer Brenka's phone was damaged during the course of this encounter." [62] at 10. The fact of damage does not provide probable cause to believe that Pabon knew the property existed.

Battery. A batterer is someone who knowingly (1) causes bodily harm; or (2) makes physical contact of an insulting or provoking nature. 720 ILL. COMP. STAT. 7/12-3. Defendants' argument that there was probable cause to arrest Pabon for battery is conclusory. Defendants rely solely on the facts that (1) Brenka's phone was damaged, and (2) Trofimchuk's wrist was injured. [62] at 9. Again, the damage to the phone was not discovered until after Pabon was arrested. While the damage suggests that contact was made with Brenka, defendants do not explain when that contact occurred, nor do they contend that they were aware of the contact before they arrested Pabon. As for Trofimchuk's wrist, defendants do not suggest what Pabon did to cause (much less *knowingly* cause) the injury. If the injury occurred during the defendants' tackling of Pabon (which, as discussed above, was arguably excessive when the facts are viewed favorably to Pabon), that does not give rise to arguable probable cause to arrest Pabon for battery.

Resisting Arrest. Defendants argue that there was probable cause to arrest Pabon for resisting arrest because "[o]nce Mr. Pabon was tackled and he wouldn't calm down despite repeated direction from the officers and he did not become compliant until he was threatened with a taser. These facts constituted probable cause for the resisting charge." [62] at 10. But defendants cannot rely on their version of disputed facts to win summary judgment. Pabon says that he did not resist the officers after he was tackled. PSOF ¶¶ 15; 40. Although Pabon admits that he continued to talk to Melendez, a reasonable person could not conclude that talking to Melendez, even in a hostile manner, gave rise to probable cause to arrest Pabon for resisting arrest. *Payne*, 337 F.3d at 776 (rejecting argument that officer had probable cause to arrest plaintiff for resisting arrest and noting that "[i]t is well settled under Illinois law . . . that the resistance must be physical; mere argument will not suffice.") (citing cases).

Perhaps there was probable cause—or at least arguable probable cause—to arrest him for battery or resisting arrest, but that cannot be shown on the undisputed facts. Summary judgment on Pabon's false-arrest claim is denied.

### C. Malicious Prosecution

"To prove the tort of malicious prosecution under Illinois law, [plaintiff] bears the burden of proving that (1) the [defendant] initiated criminal proceedings against him; (2) those proceedings were terminated in his favor; (3) there was no probable cause to support the proceedings; (4) malice was present, *i.e.*, that the officer who initiated the proceedings was motivated by something other than a desire to bring a

14

guilty party to justice; and (5) he suffered damages as [a] result of the proceedings." *Seiser v. City of Chicago*, 762 F.3d 647, 659 (7th Cir. 2014).

Defendants first argue that summary judgment should be granted at least to Areizaja, because he "never commenced any criminal action against Mr. Pabon." [62] at 11. In response, Pabon argues that *commencing* prosecution is not necessary under Illinois law, and that liability can be found as long as Areizaja played a significant role in the prosecution. [67] at 14 (citing *Frye v. O'Neill*, 166 Ill.App.3d 963 (4th Dist. 1988); *Theriault v. Vill. of Schaumburg*, 2002 U.S. Dist. LEXIS 23945 (N.D. Ill. Dec. 12, 2002)). While Pabon correctly states the law, he relies only on his allegation that Areizaja testified falsely at Pabon's criminal trial. [67] at 14. That is not enough, because witnesses are immune from civil suits based solely on their testimony in judicial proceedings. *Gauger v. Hendle*, 349 F.3d 354, 358 (7th Cir. 2003) (overruled on other grounds) ("[W]itnesses, including police officers testifying for the prosecution in a criminal trial, have absolute immunity from a damages suit based on their testimony. There is an exception for 'complaining witnesses'—the instigators of the prosecution—and it might embrace police officers who pushed aggressively for a prosecution, but Gauger does not argue that the exception is applicable."); *see also Cervantes v. Jones*, 188 F.3d 805, 809–10 (7th Cir. 1999) (citing cases); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (3d Dist. 1998); *Briscoe v. Lahue*, 460 U.S. 325, 330–31 (1983). Accordingly, Areizaja is entitled to summary judgment on Pabon's malicious-prosecution claim.

As to Brenka and Trofimchuk, defendants argue (1) they had probable cause, and (2) they lacked malice. "As the lack of probable cause is an element of malicious prosecution, evidence demonstrating that there was probable cause to believe the plaintiff had committed an offense is a complete bar to the claim." *Seiser*, 762 F.3d at 659. In arguing for summary judgment on the malicious-prosecution claim, defendants reassert the probable-cause argument they made regarding the false-arrest claim. [62] at 11.[6] That argument is rejected for the reasons already discussed.[7]

Defendants next argue that there is no evidence that any defendant acted with malice. [62] at 11. "'Malice' in the context of malicious prosecution means that the officer who initiated the prosecution had any motive other than that of bringing a guilty party to justice." *Williams*, 733 F.3d at 759–60 (internal marks omitted). "It is well established that a jury can infer malice from an absence of probable cause." *Id.* at 760 (citing cases). "To defeat summary judgment, [a plaintiff is] not required to clearly prove the lack of probable cause or to come forward with evidence that would *require* the court to infer malice. He [is] required to come forward only with evidence that would *permit* a finding of no probable cause and *permit* a reasonable

---

[6] Although the fact that Brenka's phone was damaged could not have supported Pabon's arrest, it could arguably have supported his prosecution, since defendants discovered the damage before Pabon was prosecuted. Nonetheless, as discussed above, there are additional reasons that probable cause cannot be found based only on the undisputed facts.

[7] Of particular note, Pabon was charged with criminal damage to Brenka's phone, even though defendants concede that it "would be difficult to prove" that charge, given that the phone was concealed in Brenka's pocket. [71] at 9 n.2; [62] at 9.

16

inference of malice." *Id.* (emphasis in original). For the reasons already given, Pabon has done so. Accordingly, Brenka and Trofimchuk are not entitled to summary judgment on Pabon's malicious-prosecution claim.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [63] is granted in part and denied in part. Summary judgment is granted to Officer Areizaja on Pabon's malicious-prosecution claim. In all other respects, defendants' motion is denied.

ENTER:

                                                             _____
                                                             Manish S. Shah
                                                             United States District Judge

Date:   1/7/15